**CONNTECH DEVELOPMENT COMPANY, Plaintiff–Appellee,**

v.

**UNIVERSITY OF CONNECTICUT EDUCATION PROPERTIES, INC., Defendant–Appellant.**

**No. 225, Docket 96–7256.**

United States Court of Appeals, Second Circuit.

Argued Sept. 10, 1996.

Decided Dec. 19, 1996.

5. In a consent executed on August 8, 1989, Niagara agreed to the assignment of the PPA to NBNE as security for its loan. Niagara also agreed not to take any action to terminate the PPA without first providing notice to NBNE and giving it 180 days to cure any breach, and to accept performance of Megan's obligations under the PPA from NBNE, in the event NBNE should foreclose upon Megan.

Bourke G. Spellacy, Updike, Kelly & Spellacy, P.C., Hartford, CT (Thomas J. Shortell, James M. Connor, Michael P. Botelho, Updike, Kelly & Spellacy, P.C., Hartford, CT, of counsel), for Plaintiff–Appellee.

Edward F. Hennessey, Robinson & Cole, Hartford, CT (Matthew J. Cholewa, Bradford S. Babbitt, Robinson & Cole, Hartford, CT, of counsel), for Defendant–Appellant.

Before: MINER, JACOBS and PARKER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant University of Connecticut Education Properties, Inc. ("UCEPI") appeals from a judgment entered in the United States District Court for the District of Connecticut (Squatrito, J.) granting the motion of plaintiff-appellee ConnTech Development Company ("ConnTech") to confirm an arbitration award of $2,413,179 in favor of ConnTech.

On appeal, UCEPI contends, *inter alia*, that the district court abused its discretion by retaining jurisdiction of this case, that ConnTech raised issues which were not arbitrable, and that the arbitrators exceeded the scope of their authority. For the reasons that follow, we affirm the judgment of the district court in all respects.

## BACKGROUND

In the early 1980s, the State of Connecticut planned to construct a research and development park in Mansfield, Connecticut, near the campus of the University of Connecticut ("UCONN"). In 1982, UCEPI was incorporated by the Connecticut legislature for the purpose of overseeing the construction of the park. UCEPI leased a 390–acre parcel of land from the State for the development of the park.

On May 19, 1983, Sunrise Development Co. ("Sunrise") and UCEPI entered into an agreement, memorialized in a "Master Development Agreement" ("MDA"), for the development of the proposed park. In September of 1985, Sunrise assigned its interest in the project to ConnTech, a general partnership composed of DKM Properties Corp., a New Jersey corporation having its principal place of business in New Jersey, and Flagship Properties, Inc., an Ohio corporation having its principal place of business in Ohio. Under the MDA, ConnTech was to be the "master developer" of a hotel, conference center, housing units, and research park. In addition, ConnTech was required to construct the roads and provide for the utilities in the park. UCEPI was required to obtain the necessary permits and coordinate the project with UCONN.

The MDA also included provisions for dispute resolution and for the winding up of the parties' relationship under a variety of circumstances. Article 26 of the MDA, which is entitled "Arbitration", controlled circum-

stances involving breach of the MDA. Article 26 provides:

Section 26.01 In the event a controversy or breach by either party under this Agreement shall arise as to the construction, enforcement or application thereof, the parties hereby agree to submit such issue to arbitration at the office of the American Arbitration Association situated nearest to Hartford, Connecticut and to have the matter settled by arbitration before a panel of three (3) arbitrators appointed and governed by the Construction Industry Arbitration Rules of the American Arbitration Association. The arbitrators shall be authorized to award the costs and expenses of arbitration to the prevailing party or to equitably distribute such costs and expenses. Judgment upon any award rendered by the arbitrators shall be final and may be entered in any court of competent jurisdiction. In the event of arbitration, the parties hereby agree that the arbitrators will be urged to permit discovery as long as said discovery does not unduly delay the arbitration process.

The MDA also contains a specific provision relating to default. Section 25.02 provides that, "[i]n the event of a default by UCEPI or [ConnTech], the non-defaulting party shall be entitled to (i) terminate this Agreement upon fifteen (15) days prior written notice to the other, and (ii) such other remedies available at law or equity."

Over time, the development project encountered a variety of problems and the project development goals were not being met. Disputes between the parties arose in regard to interpretation of their responsibilities under the MDA and assessment of blame for the slow pace of development. Finally, on February 1, 1990, ConnTech and UCEPI exchanged default notices.

On March 30, 1990, ConnTech submitted a claim for arbitration to the American Arbitration Association ("AAA"), alleging that UCEPI had breached the MDA and seeking declaratory and equitable relief and money damages. On that same day, ConnTech commenced an action in the district court seeking to maintain the status quo for the duration of the arbitration proceedings by restraining UCEPI from terminating the MDA, hiring another developer, or assigning its lease of the development property. On April 17, 1990, UCEPI moved to dismiss ConnTech's complaint for lack of subject matter jurisdiction, arguing that the State of Connecticut was an indispensable party to the action that could not be joined, and that the court lacked diversity jurisdiction. The district court denied UCEPI's motion.

Thereafter, UCEPI asserted counterclaims alleging that ConnTech had breached the MDA and had committed fraud and unfair trade practices. In response, ConnTech moved to stay proceedings in the district court on UCEPI's counterclaims, alleging that the disputes should be arbitrated. On January 4, 1991, the district court stayed proceedings on UCEPI's counterclaim, finding that they were subject to arbitration pursuant to the MDA.

The parties then proceeded with arbitration of the issues raised by their various allegations. The arbitrators conducted an extensive examination of the relevant evidence. On September 13, 1993, near the conclusion of the arbitration process, UCEPI filed ten motions in the district court, including a motion to dismiss the action or, alternatively, to dismiss the order of arbitration because of ConnTech's refusal to perform during arbitration; a motion to determine questions of arbitrability; and a renewed motion to dismiss for lack of jurisdiction. While UCEPI's motions were pending in district court, the arbitrators found that UCEPI had materially breached the MDA, declared that the MDA was without further force or effect as to either party, and ordered UCEPI to pay ConnTech $2,413,179.

UCEPI moved to vacate, correct or modify the arbitration award on the ground that it was manifestly erroneous and exceeded the arbitrators' authority, and that the district court's order of arbitration was void due to an alleged violation of the 11th Amendment. ConnTech then moved to affirm the arbitration award. The motions were referred to a magistrate judge, who recommended that ConnTech's motion to confirm be granted and UCEPI's motion to vacate, correct or modify be denied. The district court adopted

these recommendations and confirmed the arbitration award. The district court denied UCEPI's motions to dismiss, and denied the other pending motions as moot. This appeal followed.

## DISCUSSION

### I. Jurisdiction

■ On appeal, UCEPI first argues that the court lacked subject matter jurisdiction because the parties were not diverse. This argument is without merit.

■ Diversity jurisdiction exists where the matter in controversy exceeds $50,000,[1] and is between citizens of different states. 28 U.S.C. § 1332(a). A corporation is considered "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." § 1332(c)(1). "When reviewing a district court's determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo.*" *McCarthy v. Navistar Fin. Corp. (In re Vogel Van & Storage, Inc.),* 59 F.3d 9, 11 (2d Cir.1995).

There is no dispute that UCEPI, a corporation, is a Connecticut citizen. UCEPI insists that ConnTech, a partnership composed of corporate citizens of New Jersey and Ohio, should be deemed a citizen of Connecticut because ConnTech was established "for the sole purpose of acting as master developer pursuant to the MDA" and because Conn-Tech "acted wholly within Connecticut." However, in *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), the Supreme Court held that the citizenship of a partnership is based upon the citizenship of the individual partners, without regard to the location of the partnership entity. *Id.* at 195–96, 110 S.Ct. at 1021–22; *see Great S. Fireproof Hotel Co. v. Jones,* 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900) (citizenship of partnership is determined by the residence of its individual partners). As no ConnTech partner is a citizen of Connecticut, ConnTech is a diverse party.

Thus, the district court was properly vested with jurisdiction over the claims in this case.

### II. Nonjoinder of Connecticut

■ UCEPI's next contention is that the district court erred in not dismissing the action for the nonjoinder of an indispensable party. UCEPI argues that Connecticut is an indispensable party, but because Connecticut could not be joined pursuant to the Eleventh Amendment to the United States Constitution, the case should have been dismissed. We disagree.

In determining whether an action should be dismissed for nonjoinder, the court proceeds under the framework set forth in Fed R.Civ.P. 19. The court must initially determine whether the party should be joined as a "necessary party" under Rule 19(a). Subsection (a) provides, in relevant part, that

[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

If the nonparty is necessary but joinder is not feasible for practical or jurisdictional reasons, the court then must consider the factors set forth in Rule 19(b) to determine whether to dismiss the case. *See generally Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 108–25, 88 S.Ct. 733, 737–46, 19 L.Ed.2d 936 (1968). Under Rule 19(b), if a "necessary party" under Rule 19(a) cannot be made a party,

---

1. Congress recently has increased the amount in controversy requirement for diversity jurisdiction to $75,000.00. Federal Courts Improvement Act of 1996, Pub.L. No. 104–317, § 205, 110 Stat. 3847, 3850 (1996) (effective Jan. 17, 1997).

the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

■ We will reverse the district court's failure to join a party only for abuse of discretion. *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247 (2d Cir.1996); *Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984) (explaining that we review a Rule 19 determination for abuse of discretion because the language of Rule 19(b) leaves the court with great latitude, and requires a factual determination more than a legal one).

■ ■ Contrary to UCEPI's arguments, we do not perceive that Connecticut is a necessary party within the meaning of Rule 19(a). First, because its absence will not deny complete relief to the parties, Connecticut is not required to be joined under Rule 19(a)(1). Connecticut is a nonparty to the MDA.[2] "A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract. This rule is not inapplicable merely because the absent party happens to be the Government." *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir.1983) (citations omitted). Furthermore, Connecti-

cut is not required to do anything under the arbitration award, and thus its absence could in no way preclude complete relief from being granted. *See Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir.1996) (complete relief "can be accorded even without the [absent party], because nothing in the district court's statements or final judgment requires the [absent party] to do anything or change any of its positions").

Second, because it does not claim "an interest relating to the subject of the action," Connecticut is not required to be joined under either prong of Rule 19(a)(2). "Subparts (i) and (ii) [of Rule 19(a)(2) ] are contingent ... upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action." *Northrop*, 705 F.2d at 1043. The subject matter of ConnTech's action in aid of arbitration is ConnTech's contractual rights with regard to UCEPI. This narrow dispute simply does not implicate any of the more general interests that Connecticut arguably could claim in the development of the property and as lessor of the property itself. Connecticut's interests are separate and distinct from UCEPI's contractual obligations to Conn-Tech.

Rather than claim an interest in the subject matter of the action, Connecticut deliberately included language in its lease that appears to disavow such an interest. For example, under the heading "Relationship of Landlord and Tenant", the lease provides that Connecticut

does not by virtue of this agreement, *in any way and for any purpose*, become a partner of [UCEPI] in the conduct of [UCEPI's] business activities with respect to the Demised Premises, or otherwise, or a joint venturer or member of a joint enterprise with [UCEPI], nor does this agreement in any way bind or make [Con-

---

2. UCEPI seems to suggest that Connecticut should be viewed as though it were a party to the MDA because UCEPI, a nonprofit corporation, was "created by the State solely to develop this project," and that "the essence of UCEPI is State actors using State resources to promote a State entity." The implication being advanced is that Connecticut is liable to the same extent as UCEPI. However, there is nothing in the forma-

tion of UCEPI or its operation to suggest that it is anything other than an independent, nonprofit corporation. The only state action involved in its creation was the secretary of state's acceptance of its organizational filings. Furthermore, there is no evidence in the record to conclude that once elected or appointed to the board, individual board members' votes were controlled by the State in any way.

necticut] in any way responsible for any debts, obligations or losses of [UCEPI]. (Emphasis added.) Similarly, section 28.05 of the MDA provides: "It is specifically understood and agreed that this is solely an Agreement between UCEPI and [ConnTech] and ... in no way involves or is in any way binding upon the University or the State of Connecticut or their agents or employees." The MDA also contains a liquidated damages provision that effectively prevents ConnTech from reaching beyond UCEPI's leasehold and attaching or levying on Connecticut's interest in the parcel. Section 28.03 of the MDA provides that ConnTech's remedies in an action against UCEPI are limited to "UCEPI's interest and estate in the Property and the Project Proceeds." [3]

The express language of both the lease and the MDA clearly demonstrates that Connecticut, ConnTech and UCEPI all intended to keep Connecticut at arm's length from the activities contemplated by the MDA. The intention of the parties was manifested similarly in *Northrop,* in which the Ninth Circuit held the Government was not a necessary party:

The Government [was] not a party to any of the ... agreements [between plaintiff defense contractor and defendant aircraft manufacturer], and has never asserted a formal interest in either the subject matter of this action or the action itself. *On the contrary, the record reflects that the Government has meticulously observed a neutral and disinterested posture, and regards this as a private dispute.*

705 F.2d at 1043–44 (emphasis added).

Finally, Connecticut has clearly declined to claim an interest in the subject matter of this dispute. Rather, UCEPI has asserted several interests on Connecticut's behalf. However, "[i]t is the absent party that must 'claim an interest'" for Rule 19(a)(2) purposes. *Peregrine,* 89 F.3d at 49. UCEPI's self-serving attempts to assert interests on behalf of Connecticut fall outside the language of Rule 19(a)(2), and thus cannot be the basis for UCEPI's necessary party argument. *See id.*

### III. Arbitrability

■ UCEPI also argues that the issues raised by ConnTech were not arbitrable under article 26 of the MDA. According to UCEPI, arbitration under article 26 of the MDA was only intended to resolve interim disputes during the life of the MDA. UCEPI contends that the instant dispute involved issues of default leading to termination, which was properly governed by article 25.[4] Section 25.02 provides that, "[i]n the event of a default by UCEPI or [ConnTech], the non-defaulting party shall be entitled to (i) terminate this Agreement upon fifteen (15) days prior written notice to the other, and (ii) such other remedies available at law or equity." UCEPI apparently construes articles 25 and 26 as mutually exclusive. We disagree.

■ "We review *de novo* a district court's determination of the arbitrability of a claim." *New York v. Oneida Indian Nation,* 90 F.3d 58, 60 (2d Cir.1996) (citing *Collins & Aikman Prods. Co. v. Building Sys., Inc.,* 58 F.3d 16, 19 (2d Cir.1995)). UCEPI first raised this issue when it opposed ConnTech's motion for a stay of the proceedings on UCEPI's counterclaim in the district court. UCEPI argued that its counterclaim and the allegations raised in ConnTech's complaint dealt with

---

**3.** UCEPI contends that Connecticut has an interest in the subject matter because "any judgment against UCEPI would necessarily implicate the State's treasury" and that "there are no assets with which this judgment could be satisfied except public assets or those impressed with a public trust." We reject this argument in view of the language of both the lease and the MDA expressly disavowing that Connecticut bears any such responsibility.

**4.** UCEPI argues this in two respects. First, UCEPI contends that continued performance was a condition precedent to arbitration, and

that by failing to fulfill that condition, ConnTech was not entitled to arbitration of the disputed issues. UCEPI contends that the distinction between articles 25 and 26 supports its interpretation of performance as a condition precedent to arbitration. Second, UCEPI argues that the arbitrators exceeded the scope of their authority by terminating the MDA and awarding lump sum damages, which UCEPI contends was not authorized by the contractual scheme of the MDA as demonstrated by the contrasting language of articles 25 and 26.

defaults and termination of the agreement, and that if these allegations were construed as raising arbitrable issues, article 25's provision providing the nondefaulting party "such other remedies available at law or equity" would be rendered meaningless. The district court heard and rejected UCEPI's argument on January 4, 1991. We hold that the district court properly found the issues arbitrable, in light of the plain language of article 26 and the federal policy strongly favoring arbitration.

■ "We will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Collins*, 58 F.3d at 19 (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir.), *cert. dismissed*, 501 U.S. 1267, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991) (omitting internal quotation)). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983); *see Oneida Indian Nation*, 90 F.3d at 61 (doubts regarding waiver are resolved in favor of arbitration); *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 981 (2d Cir.1996) (same); *see also Threlkeld*, 923 F.2d at 250 ("Federal policy requires us to construe arbitration clauses as broadly as possible." (internal quotation omitted)).

Article 26 of the MDA addresses arbitration as a means of dispute resolution. Section 26.01 of the MDA provides that, "[i]n the event a controversy or breach by either party under this Agreement shall arise as to the construction, enforcement or application thereof, the parties hereby agree to submit such issue to arbitration." The interpretation of this provision urged upon us by UCEPI is extremely narrow. Each party has accused the other of failing to comply with the terms of the MDA. For example, UCEPI contends that ConnTech breached its obligations under the MDA by its failure to: build the hotel/conference center; provide certified financial statements; make financial advances to UCEPI; complete construction of a road; and continue to perform during arbitration. ConnTech contends that UCEPI breached its obligations under the MDA by its failure to: provide connections to the water and sewage systems of UCONN; provide an articulation of acceptable design standards for the hotel/conference center; and provide input and assistance to ConnTech in investigating and arranging financing alternatives. Thus, the parties obviously disputed the "construction, enforcement or application" of the MDA, which, under the express terms of the MDA, brings the dispute within the purview of the arbitration clause.

It is obvious from the foregoing that article 25 does not apply. Section 25.01 provides that a party "shall be considered in default" if it (i) abandons the project, (ii) becomes insolvent or bankrupt, or (iii) fails to timely cure noncompliance with the terms and conditions of the MDA after receiving notice of default. The disputes between the parties do not fit neatly into the "default" provisions of this section.

■ UCEPI contends that, even if the issues are arbitrable, ConnTech forfeited its right to arbitration because ConnTech did not continue to perform during the arbitration proceedings in accordance with section 26.02 of the MDA. Section 26.02 of the MDA provides that, "[u]nless otherwise agreed to in writing, throughout such arbitration proceedings the parties shall continue to perform their respective duties and obligations ... under the Agreement and all actions by the parties to otherwise enforce their rights hereunder with respect to such disputed item shall be stayed." UCEPI construes this section to mean that continued performance is a condition precedent to arbitration. ConnTech first raised this issue before the district court in September of 1993. The district court determined that, in accordance with the express language of section 26.01 of the MDA, the arbitrators' authority under the MDA was "broad enough to cover the failure to perform during arbitration." We agree.

The language of section 26.02, essentially a status quo clause, does not expressly provide that continued performance functions as a condition precedent to arbitration. The parties disagree as to the meaning of this section. ConnTech argues that an alleged breach of section 26.02 does not excuse either party from arbitration. As this dispute over the meaning of section 26.02 involves "a controversy or breach by either party [that has arisen] as to the construction, enforcement or application" of the MDA, it is a matter within the authority of the arbitrators to resolve, pursuant to the parties' express agreement under section 26.01 of the MDA.

 Moreover, by waiting until September of 1993 to raise this argument before the district court, UCEPI waived the right to object on the basis of ConnTech's alleged violation of a condition precedent. If UCEPI understood performance to be a condition precedent to arbitration, then UCEPI could have asserted this argument well before September of 1993, by which point the arbitration proceedings had long been underway. An objection to the arbitrability of a claim must be made on a timely basis, or it is waived. *See, e.g., Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir.1983) (unjust to permit appellant to challenge arbitration, after voluntary participation for several months, shortly before arbitrator's decision); *Owen–Williams v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 907 F.Supp. 134, 137 (D.Md.1995) (plaintiff's willing submission of claims to arbitration without protest during 19 days of arbitration proceedings waived any right to contest arbitration of claims), *aff'd*, No. 96–1442, 1996 WL 688219 (4th Cir. Dec.2, 1996) (*per curiam*); *International Longshoremen's Ass'n v. West Gulf Maritime Ass'n*, 594 F.Supp. 670, 674 (S.D.N.Y.1984) ("One who voluntarily participates in arbitration will not thereafter be heard to complain that the arbitrator was without authority to act.").

By the time UCEPI asserted the argument that ConnTech forfeited the right to arbitrate by its alleged breach of section 26.02, more than 43 months had elapsed since the parties first exchanged default notices, more than 41 months had elapsed since service of the arbitration demand, and more than 15 months had passed since the first witness was sworn in the arbitration. The arbitrators had conducted an extensive examination of the relevant evidence, including 45 days of hearings (starting on April 28, 1992), 409 documentary exhibits, the testimony of 14 witnesses, and a tour of the development site. The last witness was heard on October 21, 1993. UCEPI waived its objection to arbitrability by reason of its delay in objecting.

## IV. The Arbitration Award

 Assuming the arbitrability of the claims, UCEPI's final argument is that the arbitration award is invalid because it is not final and definite. UCEPI identifies two respects in which the award is not final and definite. First, the award is in the form of lump sum damages without a payment structure or schedule. UCEPI contends that, due to the "peculiar remedies provisions of the MDA," the parties' project costs must be determined in order for ConnTech to collect its judgment.[5] Second, UCEPI argues that the arbitrators failed to disclose their computations, thus preventing effective judicial review. We find both of these arguments to be without merit.

 The Federal Arbitration Act provides, in pertinent part:

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

. . . .

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

---

5. Section 28.03 of the MDA limits ConnTech's ability to satisfy any judgment to recovery out of UCEPI's interest in the property and the project proceeds. Section 22.01(a) of the MDA provides that project proceeds are to be distributed on a pro rata basis for project costs that each party actually expended.

9 U.S.C. § 10(a)(4). An award is mutual, definite and final if it "resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties." *Dighello v. Busconi,* 673 F.Supp. 85, 90 (D.Conn.1987), *aff'd,* 849 F.2d 1467 (2d Cir.1988). When reviewing a district court's decision confirming an arbitration award, we "accept[ ] findings of fact that are not 'clearly erroneous' but decid[e] questions of law *de novo." First Options of Chicago, Inc. v. Kaplan,* —— U.S.——, ——, 115 S.Ct. 1920, 1926, 131 L.Ed.2d 985 (1995).

The district court's determination that there was nothing more to litigate is not clearly erroneous. Specific money damages have been awarded to ConnTech in the amount of $2,413,179 plus interest, and the MDA is no longer in effect.[6] On its face, the award is mutual, final and definite. UCEPI's speculation that subsequent litigation will be required to ascertain respective project costs in order for ConnTech to recover the judgment is unpersuasive, because the record reveals that both parties already engaged in vigorous argument before the arbitrators regarding their respective project costs; hence, we accept that the arbitrators considered the project costs when calculating the arbitration award amount. Both the AAA's Construction Industry Arbitration Rules (the "AAA Rules"), which the parties expressly incorporated into their contract, and the MDA arbitration provision are sufficiently broad to authorize the award granted. Rule 43 of the AAA Rules authorizes the arbitrator to

> grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties. . . . The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation . . . in favor of any party.

Therefore, we hold that the district court correctly determined that the award is definite and final.

■ With respect to the award computation, although arbitrators are generally not required to disclose the calculations used to arrive at an award, this Court has stated that, where

> an arbitrator's award appears to have been reached on the basis of a precise mathematical calculation, it is desirable, and in some cases may be necessary, to know the basis for the calculations underlying the award. A remand for clarification in such circumstances would not improperly require arbitrators to reveal their reasons, but would instead simply require them to fulfill their obligation to explain the award sufficiently to permit effective judicial review.

*Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 894 (2d. Cir.1986). We declined to remand for clarification in *Siegel,* however, because "resolution of the issue required interpretation of ambiguous contractual provisions—a task well within the domain of the arbitrators." *Id.* So long as some ground for the arbitrators' award "can be inferred from the facts of the case, the award should be confirmed." *Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972); *see also Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir.1992) (award should be enforced if there is "barely colorable justification" (quotation omitted)); *Kurt Orban Co. v. Angeles Metal Sys.,* 573 F.2d 739, 740 (2d Cir. 1978) (court will not examine basis for lump sum award); *Blue Bell, Inc. v. Western Glove Works Ltd.,* 816 F.Supp. 236, 241 (S.D.N.Y. 1993) ("Arbitrators are not required to explain their rationale in making their awards.").

The record indicates that during the lengthy arbitration proceedings, both parties engaged in considerable debate as to the respective damages each allegedly had suf-

---

**6.** The arbitration award states:

> With respect to the claims of ConnTech against UCEPI, we award to ConnTech the sum of $2,413,179.00 plus interest at the rate of 7% per annum from February 1, 1990. All other claims of ConnTech are hereby denied.

> UCEPI's counterclaims are denied.

> We further find that the said Master Development Agreement has been breached in material respect by UCEPI and is without further force or effect as to either party.

fered. For example, in UCEPI's memorandum submitted on January 3, 1994, UCEPI made the following assertions:

What now seems to be apparent is that ConnTech is only asking this panel to find:

1. that UCEPI breached the MDA . . . ;

2. that such breaches justify an award of the moneys spent by ConnTech on the project;

3. that all the moneys spent by Conn-Tech qualify as project costs under the MDA; and

4. that these project costs total somewhere between $2,253,357 (Ex. 185R, and see Ex. 321C) and $5,131,797 (exclusive of loans to UCEPI). (Ex. 275C).

UCEPI submits, as a basic legal proposition, that ConnTech has the burden of proof on each of these issues and, as a basic factual proposition, that it has not proven any of them.

UCEPI further submits, by way of set-off and counterclaim, that:

1. ConnTech had a clear duty to build a hotel/conference center but did not, which fact alone justifies an award to UCEPI of at least $6,000,000.

2. ConnTech had a clear duty to build the road and infrastructure but did not, as a result of which UCEPI has had to spend $4,300,000 that it received from the State.

3. UCEPI incurred gross project costs of $1,625,997 through June 30, 1991, in support of the project (Ex. 365R).

The issues were clearly identified, and these matters were specifically argued before the arbitration panel. As this excerpt from UCEPI's memorandum indicates, the award was within the range alleged by ConnTech to be the amount it had spent on project costs. There is no question that both parties incurred significant expenses in connection with this ill-fated project. Rather, the question is how much, and which party is liable. Resolution of the question of damages thus required interpretation and application of contractual provisions, "a task well within the domain of the arbitrators," *Siegel*, 779 F.2d at 894. Given the expenses incurred by both parties, grounds for the award can be "inferred from the facts of the case." *Sobel*, 469

F.2d at 1216. We therefore need not remand for clarification of the basis for the arbitrators' award in the present case.

UCEPI also argues that the district court's adoption of the arbitration award was clearly erroneous because the award itself was manifestly erroneous. We reject this argument. A court may set aside an arbitration award for "manifest disregard of the law." *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.1978) (internal quotation omitted). We explained in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986), that this "clearly means more than error or misunderstanding with respect to the law." *Id.* at 933. Manifest disregard "implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to . . . pay no attention to it." *Id.* Similarly, the mere fact that an arbitrator erroneously decides the facts is not a ground for vacating the award. *Siegel*, 779 F.2d at 892–93. UCEPI simply asserts that the arbitrators erred in finding that it had breached the MDA and that ConnTech had not. UCEPI fails to identify any error of law on the part of the arbitrators, let alone a manifest disregard of the law.

We have considered UCEPI's remaining contentions and find them all to be without merit.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.