14-3348
Am. Trucking Ass'ns v. N.Y. State Thruway Auth.

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: June 17, 2015     Decided: August 4, 2015)

Docket No. 14-3348

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMERICAN TRUCKING ASSOCIATIONS,
INC., WADHAMS ENTERPRISES, INC.,
LIGHTNING EXPRESS DELIVERY
SERVICE INC., WARD TRANSPORT &
LOGISTICS CORP., on behalf of themselves
and all others similarly situated,

Plaintiffs-Appellants,

-v.-

NEW YORK STATE THRUWAY
AUTHORITY, NEW YORK STATE
CANAL CORPORATION, THOMAS J.
MADISON, JR., in his official capacity as
Executive Director of the New York State
Thruway Authority, HOWARD MILSTEIN,
in his official capacity as Chair of the New
York State Thruway Authority/Canal
Corporation Boards of Directors, DONNA
J. LUH, in her official capacity as Vice-
Chair of New York State Thruway

Authority/Canal Corporation Boards of Directors, E. VIRGIL CONWAY, in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors, RICHARD N. SIMBERG, in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors, BRANDON R. SALL, in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors, J. RICE DONALD, JR., in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors, JOSE HOLGUIN-VERAS, in their official capacities as members of the New York State Thruway Authority/Canal Corporation Boards of Directors,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Before:     NEWMAN, JACOBS, and CALABRESI, Circuit Judges.

Plaintiffs allege that the New York State Thruway Authority charges excessive tolls in violation of the Commerce Clause of the United States Constitution.  The district court (McMahon, J.) dismissed for failure to join a necessary party (the State of New York).  We vacate the judgment of the district

2

court and remand for further proceedings consistent with this opinion. Judge

Newman concurs in a separate opinion.

RICHARD B. KATSKEE, Mayer Brown LLP, Washington, District of Columbia (Evan M. Tager, Thomas P. Wolf, Mayer Brown LLP, Washington, District of Columbia; Richard Pianka, ATA Litigation Center, Arlington, Virginia, on the brief), for Plaintiffs-Appellants.

ANDREW W. AMEND, Assistant Solicitor General (Barbara D. Underwood, Solicitor General; Cecelia C. Chang, Special Counsel to the Solicitor General; Philip V. Tisne, Assistant Solicitor General; on the brief; for Eric T. Schneiderman, Attorney General of the State of New York), New York, New York, for Defendants-Appellees.

DENNIS JACOBS, Circuit Judge:

Three commercial trucking companies along with their national trade association and a putative class of commercial truckers ("plaintiffs") sue the New York State Thruway Authority (the "Thruway Authority") under 42 U.S.C. § 1983, alleging that the Thruway Authority charges excessive tolls in violation of the Commerce Clause of the United States Constitution. In particular, plaintiffs allege that the Thruway Authority diverts excessive highway tolls to fund

3

maintenance and improvements to the New York Canal System (the "Canal System")--projects that are unrelated to maintaining the Thruway as a channel of interstate commerce. The district court (McMahon, J.) dismissed under Federal Rule of Civil Procedure 12(b)(7) for failure to join the State of New York as a necessary party under Rule 19. We conclude that the ruling was an abuse of discretion, and therefore vacate the judgment and remand for further proceedings consistent with this opinion.

**BACKGROUND**

The district court dismissed under Federal Rule of Civil Procedure 12(b)(7). Accordingly, the following facts drawn from plaintiffs' complaint are presumed true, and are presented in the light most favorable to plaintiffs. See, e.g., Clarendon, Ltd. v. Bank of Saurashtra, 77 F.3d 631, 633 (2d Cir. 1996). Most facts are undisputed.

The Governor Thomas E. Dewey Thruway system (the "Thruway") is New York's piece of the National Interstate Highway System; stretching 570 miles across the State of New York, it includes portions of I-87, I-90, I-95, I-190, and

I-287.  As a major artery of interstate commerce in the Northeast, it is a critical route for commercial truckers serving the region.

The Thruway is operated and managed by the New York State Thruway Authority, an "autonomous public-benefit corporation" created by a statutory charter from the State of New York.  Compl. ¶ 17.  Its statutory mandate is "to finance, construct, reconstruct, improve, develop, maintain, or operate" the Thruway.  N.Y. Pub. Auth. Law § 353.  Its organic statute authorizes the Thruway Authority to "sue and be sued," to "make contracts," and to "borrow money and issue negotiable notes."  Id. § 354(1), (7), (12).

The Thruway Authority is not an "arm of the state" and therefore does not enjoy New York's Eleventh Amendment state sovereign immunity.  Mancuso v. N.Y. State Thruway Auth., 86 F.3d 289, 296 (2d Cir. 1996) ("We are unable to conclude that subjecting the Thruway Authority to suit in federal court would be an affront to the dignity of New York.").  As we explained in Mancuso,

> [t]he Thruway Authority . . . is not a traditional state agency, but a public entity that is generally self-funded and, except for the appointment of its members to nine-year terms, it is not under significant state control.  Although the Thruway Authority may be identified closely with the state, New York State has given the Thruway Authority an existence quite independent from the state and exercises the most minimal control over the Thruway Authority.

Id. at 296.

5

"No provision of New York law requires the state to fund the Thruway Authority's operations," id. at 295, the state is not liable for its debts, id. at 296; and it receives no state tax dollars and only de minimis federal funds. Instead, the Thruway Authority relies almost entirely on tolls. It is a "strictly . . . user-supported system," Compl. ¶ 47, that is "structured . . . to be self-sustaining." Mancuso, 86 F.3d at 296 (internal quotation marks omitted).

With the ascendancy of the Thruway and other modern channels of interstate commerce, the New York Canal System has faded into obsolescence. The Canal System--"a network of waterways that stretches across upstate New York," including the Erie, Oswego, Champlain, Cayuga, and Seneca Canals-- "[o]nce a vital link between the markets of the East Coast and suppliers in the Midwest, . . . is now primarily a recreational space for tourists." Compl. ¶ 2.

Since the completion of the Erie Canal in the early 1800s, the New York constitution has included explicit textual protections for the Canal System, and entrusted its management and care to the State. The wording has shifted over the years, but there has always been a constitutional commitment by the State of New York to care for the Canal System. The current provision is as follows:

6

>The legislature shall not sell, abandon or otherwise dispose of the now existing or future improved barge canal, the divisions of which are the Erie canal, the Oswego canal, the Champlain canal, and the Cayuga and Seneca canals, or of the terminals constructed as part of the barge canal system; . . . such canals and terminals shall remain the property of the state and under its management and control forever.

N.Y. Const. art. XV, § 1.

The New York constitution also obligates the legislature to support the canals financially, to some degree:  "The legislature shall annually make provision for the expenses of the superintendence and repairs of the canals, and may provide for the improvement of the canals in such manner as shall be provided by law."  Id. § 3.

Historically, the Canal System was supported through the normal appropriations process and was managed by the New York Department of Transportation.  In 1992, the legislature transferred responsibility for management of the Canal System from the New York Department of Transportation to the Thruway Authority.  See N.Y. Canal Law § 5.  The 1992 legislation created a subsidiary corporation of the Thruway Authority, called the New York Canal Corporation (the "Canal Corporation"), "which shall be deemed to be the state for the purposes of such management and control of the canals but

7

for no other purposes." Id. § 6(1). Finally, to respect the constitutional mandate that the State own and operate the canal system "forever," the 1992 legislation confirmed that the "canal system shall remain the property of the state and under its management and control as exercised by and through" the Thruway Authority and the Canal Corporation. Id.

Now that the Canal System is operated by the Canal Corporation as a subsidiary of the Thruway Authority, the considerable cost of maintaining (and sometimes upgrading, developing, and expanding) the Canal System is funded almost entirely through the collection of highway tolls. No appropriations from New York's general fund have been needed for many years. When the Canal System needs more funding, the Thruway Authority raises tolls. Approximately ten to twelve percent of Thruway tolls are diverted to canal-related development projects: about 80 to 100 million dollars annually.

Plaintiffs, who pay tolls on the Thruway daily, filed this lawsuit in November 2010. Primarily, plaintiffs allege that the Thruway Authority is unduly burdening interstate commerce by collecting excessive tolls to fund canal-related development projects upstate, rather than to maintain the Thruway as a channel of interstate commerce.

8

Plaintiffs did not name the State of New York as a defendant, and the State has not sought to intervene. The Thruway Authority--through its counsel, the Attorney General for the State of New York--moved to dismiss under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party under Rule 19. (Because of the Eleventh Amendment, the State cannot be joined without its consent.)

The district court granted the motion and dismissed without prejudice. First, the court noted its disagreement with our precedent in Mancuso, which forecloses Eleventh Amendment sovereign immunity for the Thruway Authority. See Am. Trucking Ass'ns, Inc. v. N.Y. State Thruway Auth., No. 13 Civ. 8123, 2014 WL 4229982, at *5 (S.D.N.Y. Aug. 6, 2014) ("Were I writing on a blank slate, I would conclude that the Thruway Authority was in fact cloaked with sovereign immunity . . . [a]nd I would dismiss this lawsuit on that ground."). Then, after acknowledging that Mancuso is the law of this Circuit, the district court turned to Rule 19 to "recognize constitutional reality in a different way," by holding that the State was both a necessary and an indispensable party. American Trucking, 2014 WL 4229982, at *6.

Plaintiffs appeal.

## DISCUSSION

This Court reviews dismissal of a complaint under Rule 12(b)(7)--that is, "for failure to join a party under Rule 19"--only for abuse of discretion. <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 188 (2d Cir. 1999). Questions of law that inform a district court's Rule 19 determination are reviewed <u>de novo</u>. <u>Seneca Nation of Indians v. New York</u>, 383 F.3d 45, 47 (2d Cir. 2004) (per curiam). An exercise of discretion that rests on an error of law is necessarily an abuse of discretion. <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).

## I

"In determining whether an action should be dismissed for nonjoinder, the court . . . must initially determine whether the party should be joined as a 'necessary party' under Rule 19(a)." <u>ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.</u>, 102 F.3d 677, 681 (2d Cir. 1996). As relevant here, an absent person may be "necessary" under Rule 19(a) if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the

10

person's absence may[,] . . . as a practical matter[,] impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B).[1]

If joinder of a "necessary" party under Rule 19(a) is not feasible, the court consults Rule 19(b), which "requires courts to consider whether, 'in equity and good conscience,' the party is one without whom the action between the remaining parties cannot proceed--or, in the traditional terminology, whether the absent party is 'indispensable.'"  Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 132 (2d Cir. 2013) (quoting Fed. R. Civ. P. 19(b)).  "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  7 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed. 2015).

---

[1]    An absent person may also be "necessary" under Rule 19(a) if "the court cannot accord complete relief among existing parties" without the absent person, or if a person's absence subjects an existing party to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1).  None of those provisions of Rule 19(a) is at issue in this case.

11

## II

### A

The Thruway Authority argues that three distinct state "interests" are threatened if this lawsuit proceeds in the absence of the State of New York. None of them is protected by Rule 19(a).

**1.** New York owns the Canal System, and the New York constitution provides that the State "shall not sell, abandon or otherwise dispose of" it. N.Y. Const. art. XV, § 1. That prohibition lasts "forever." Id. Relying on this language, the Thruway Authority has suggested that the State's real property interest in the Canal System, and its corresponding obligation not to "abandon" it, are threatened by this litigation, and, thus, that this real property interest makes the State a necessary party.

To the extent this argument is still being advanced on appeal, we reject it. No judgment in this case would require New York to "sell, abandon or otherwise dispose of" the Canal System. As context and common usage make clear, to "sell" and to "abandon" property are two ways to "dispose of" it. See United States v. Cowan, 396 F.2d 83, 87 (2d Cir. 1968) ("The abandonment of property is

12

the relinquishing of all title, possession, or claim to or of it--a virtual intentional throwing away of it."). Since this lawsuit challenges only the collection of excessive Thruway tolls to fund unrelated projects, title to real property owned by an absent party is not at issue, and cannot serve as a valid interest under Rule 19(a).[2]

The district court focused on the State's supposed obligation "to fund the [canal] system so as to avoid 'abandoning' it." American Trucking, 2014 WL 4229982, at *5. Even ignoring that the word "abandon" is a real property term of art, and accepting the linguistic premise that insufficient funding can lead to abandonment, this lawsuit is no threat to that constitutional obligation, which the State can fulfill using its own funding sources.

**2.** The Thruway Authority contends that the State has a financial interest in the outcome of this litigation because, if the practice of diverting toll revenue to support the Canal System is held unconstitutional, the State will have to come up with another way to raise these funds. The State's interest in having another

---

[2] That distinguishes one of the authorities heavily relied upon by the Thruway, Seneca Nation of Indians v. New York, which stands for the unsurprising proposition that an absent sovereign may be a necessary party to a lawsuit that calls into question a real property interest of the sovereign. 383 F.3d 45 (2d Cir. 2004) (per curiam).

13

entity fulfill its constitutional obligation to support the Canal System is assuredly significant, but it is too remote and indirect to make it a necessary party.

An adverse judgment in this case would run only against the Thruway Authority, and "the state is not legally obligated to pay for the Thruway Authority's debts."  Mancuso, 86 F.3d at 296.  True, any adverse judgment would prohibit the diversion of excess tolls to support projects that are unrelated to the Thruway's role as a channel of interstate commerce.  See generally Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth., 567 F.3d 79, 86-88 (2d Cir. 2009).  But that the allegedly excessive tolls are diverted to support *canals* is beside the point--it is the *tolls* that are alleged to be unconstitutional.  Plaintiffs' constitutional claims would be identical if the Thruway Authority charged excessive tolls to underwrite the State's interest in a new baseball stadium, or agricultural research, or repertory theatre.  The State may deem such expenditures essential or not, and may fund them or not; and may well prefer that the funding come from elsewhere.  In the same way, if the Thruway Authority loses, the State will likely have to come up with some other way to raise money for the canals.

This theory of the State's Rule 19 interest, premised on a lost stream of money, is inconsistent with Circuit precedent. In ConnTech Development Co. v. University of Connecticut Education Properties, Inc., 102 F.3d 677 (2d Cir. 1996), we considered a Rule 19 interest asserted on behalf of the State of Connecticut, by a corporate entity (named "UCEPI") that was "incorporated by the Connecticut legislature for the purpose of overseeing the construction" of a state-owned park on the campus of the University of Connecticut. Id. at 679. The relevant contract, however, confirmed that UCEPI was legally distinct from the State, and that the State was not liable for UCEPI's debts. Id. at 682-83. When UCEPI was sued for breach of contract by a construction sub-contractor, it moved to dismiss for failure to join a necessary party who could not be joined: the State of Connecticut, which owned the property, funded the construction project, and had "created [UCEPI] solely to develop this project." Id. at 682 n.2. This Court rejected UCEPI's Rule 19 argument:

> This narrow dispute simply does not implicate any of the more general interests that Connecticut arguably could claim in the development of the property and as lessor of the property itself. Connecticut's interests are separate and distinct from UCEPI's contractual obligations to ConnTech. . . . The express language of [] the lease . . . clearly demonstrates that Connecticut, ConnTech, and

15

> UCEPI all intended to keep Connecticut at arm's length from the activities contemplated by the [contract].

Id. at 682-83. Because it had kept the state-owned corporation "at arm's length," id.--in that case, by contract--any indirect interest of Connecticut in the outcome of a lawsuit against UCEPI was insufficient under Rule 19.

To accomplish the goals of corporate separation and limited liability, Connecticut employed a contract; New York employs statutes and constitutional provisions. New York has disclaimed liability for the financial obligations of public-benefit corporations like the Thruway Authority. N.Y. Const. art. X, § 5. It has granted power to the Thruway Authority to "sue and be sued," to "make contracts," and to "borrow money" on its own. N.Y. Pub. Auth. Law § 354. And it has specified that the Thruway Authority is the "state" for "exercising the powers and duties" given to it by the Canal Law, but "for no other purposes." N.Y. Canal Law § 5. "The express language" of these provisions "clearly demonstrates" that the State intended to keep itself "at arm's length from the activities" of the Thruway Authority. ConnTech, 102 F.3d at 683.[3]

_____

[3] The concurring opinion takes issue with our discussion of ConnTech. Judge Newman perceives a distinction based on the relevant contract in ConnTech, which "expressly disavowed" any direct financial responsibility for Connecticut, see 102 F.3d at 683 n.3, "whereas an adverse judgment in our case

16

New York and the Thruway Authority, having reserved and retained the benefits of corporate separation for all other purposes, may not pierce their own arrangements to accommodate litigation strategy. That is so even if, as a practical matter, a defeat for the Thruway Authority may have downstream effects that cost the State money. The State's interest here is the same as its interest in the fortunes of any other entity that contributes to a state function and thereby and to that extent obviates an expenditure that the state might otherwise make. Cf. Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 50-51 (1994) ("A charitable organization may undertake rescue or other good work which, in its absence, we would expect the State to shoulder. But none would conclude, for example, that in times of flood or famine the American Red Cross, to the extent it works for the public, acquires the States' Eleventh Amendment immunity."); see also Askew v.

would create a serious financial risk for New York." Op. of Judge Newman at 6. The distinction is not as strong as the affinity. Just as in ConnTech, the State in this case will have no direct financial obligation stemming from the judgment, because of the corporate separateness it established. See N.Y. Const. art. X, § 5. In any event, we are not relying on stare decisis, and Judge Newman may be right that ConnTech's holding, standing alone, does not necessarily "defeat[] the State's claim" to a Rule 19 interest. What matters is that New York's interests in this case are, by the State's own design, "separate and distinct," ConnTech, 102 F.3d at 682, from those of the Thruway Authority--and that subverts the Thruway Authority's Rule 19 argument.

<u>Sheriff of Cook Cnty., Ill.</u>, 568 F.3d 632, 637 (7th Cir. 2009) ("[T]he County does not become an 'indispensable' party [under Rule 19] just because it may need to indemnify the Sheriff in the future . . . ."). New York's financial interest in the outcome of this lawsuit--however large--is too remote and indirect to qualify as a valid Rule 19 interest.

**3.** The Thruway Authority contends that New York's "interest[] in defending the validity of its own laws," Appellee Br. at 36, is an interest that makes the State a necessary party under Rule 19. No precedent supports that view. State (and federal) statutes are frequently challenged as unconstitutional without the state (or federal) government as a named party. A federal statute contemplates such suits by providing a notice mechanism and relaxed intervention rules for an absent sovereign in cases challenging the validity of its laws. <u>See</u> 28 U.S.C. § 2403(b) (in any federal suit "to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene . . . for argument on the question of constitutionality"); <u>see also</u> <u>id.</u> § 2403(a) (analogous provision for the federal government). If, as the

18

Thruway Authority argues, a state is a necessary party in *any* lawsuit in which a state statute is challenged as unconstitutional, there would be no need for these procedures.

**B**

Even assuming that New York had a relevant "interest" protected by Rule 19(a), the State is only a necessary party if proceeding in its absence might, "as a practical matter[,] impair or impede" New York's "ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B)(i). As the text of the rule suggests, "[p]ragmatic considerations are controlling" in conducting this inquiry. See 7 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1601 (3d ed. 2015).

In briefing and oral argument, the Thruway Authority warns of the grave prejudice to be suffered by the State of New York if this case is litigated in its absence. That argument is advanced by counsel for the Thruway Authority, Eric T. Schneiderman, the Attorney General of the State of New York. So the careful reader will notice that the Thruway Authority's attorney is the chief legal officer of the State of New York, and the head of New York's Department of Law. In

19

this role, he "serves as the guardian of the legal rights of the citizens of New York, its organizations and its natural resources." Our Office, Attorney General Eric T. Schneiderman, http://www.ag.ny.gov/our-office (last visited August 3, 2015).

Whatever interest New York has in the outcome of this lawsuit, we are confident that Mr. Schneiderman will keep it in mind. As we recognized in a recent Rule 19 decision, "prejudice to absent parties approaches the vanishing point when the remaining parties are represented by the same counsel, and when the absent and remaining parties' interests are aligned in all respects." Marvel, 726 F.3d at 134; see also United Transp. Union v. Long Island R. Co., 634 F.2d 19, 22 (2d Cir. 1980) ("[I]n light of the fact that the MTA and LIRR . . . took the same position as the Attorney General would have taken, he cannot be heard to claim that the disposition of the action in his absence impairs his ability to protect the State's interests."), rev'd in part on other grounds, 455 U.S. 678 (1982). The Thruway Authority does not dispute that its interests are "aligned in all respects," Marvel, 726 F.3d at 134, with those of the State. Nor could it--were there adversity between the Thruway Authority and the State, Attorney General

20

Schneiderman would surely be conflicted out of his representation of the Thruway Authority.  See N.Y. Rule of Prof'l Conduct 1.7.

The absence of prejudice to the State can be demonstrated by a hypothetical.  If plaintiffs had named the State as an additional defendant, and filed in state court to avoid an Eleventh Amendment problem, the substantive Commerce Clause question would be briefed identically and by the same counsel.  The only likely difference would be that New York might include a separate defense that, because it is a legally distinct entity from the Thruway Authority and is not liable for the Thruway's obligations, the State should be dismissed as a defendant.

It follows that, if this case cannot be litigated without New York, it will proceed anyway--in state court.  But Rule 19 is about protecting absent persons from unfair prejudice--it is not about giving a named defendant veto power over the plaintiff's chosen forum.  Cf. A.L. Smith Iron Co. v. Dickson, 141 F.2d 3, 6 (2d Cir. 1944) (L. Hand, J.) (rejecting defendant's argument that plaintiffs failed to join a necessary party, reasoning that "the [absent party] can avoid . . . prejudice by intervening in this action," and "[t]hat being true, [his] only interest in the

21

dismissal of the complaint is . . . in the choice of the forum in which . . . he will assert his rights").

Because, "as a practical matter," any interest New York might have in this litigation will be neither "impair[ed]" nor "impede[d]" by New York's absence, the State is not a necessary party under Rule 19(a).

## III

Having concluded that the State of New York is not a necessary party under Rule 19(a), we need not consider whether the State was also an indispensable party under Rule 19(b), nor whether plaintiffs forfeited any separate Rule 19(b) argument by failing to raise it in their opening brief.

## CONCLUSION

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

American Trucking Assn. v. N.Y. State Thruway Authority
Docket No. 14-3348

JON O. NEWMAN, Circuit Judge, concurring in the result:

I agree that the State of New York need not be joined as a necessary and indispensable party in this lawsuit but for only one of the reasons the Court sets forth: the Attorney General of the State of New York has appeared in the case (in the District Court and here) representing the Defendant-Appellant New York State Thruway Authority, and his argument that the Authority's use of tolls to pay for maintenance of the State's Canal System does not violate the dormant Commerce Clause will be exactly the same, whether asserted only on behalf of the Authority or also on behalf of the State.

Moreover, as the State's chief legal officer, he can be expected to advance that argument as vigorously as if the State were a party to this lawsuit. In urging dismissal under Rule 19 of the Federal Rules of Civil Procedure, with the consequence of refiling in state court because of the State's Eleventh Amendment immunity in federal court, the Attorney General makes no claim that he would advance a different or stronger argument on the constitutional issue in the state court. "[J]oinder will not be compelled under the 'impair or impede' provision of Rule 19(a) if the absentee's interest is

1

adequately represented by an existing party." 4 Moore's Federal Practice § 19.03[3][f][ii] (2014) (footnote collecting cases omitted). *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 134 (2d Cir. 2013).

I cannot agree, however, with several of the Court's other reasons and therefore concur only in the result that reverses the dismissal of the suit for failure to join the State as a party under Rule 19.

1. The Court acknowledges that "if the Thruway Authority loses, the State will likely have to come up with some other way to raise money for the canals," Court op. at 15, but nevertheless concludes that "New York's financial interest in the outcome of this lawsuit – however large – is too remote and indirect to qualify as a valid Rule 19 interest." Court op. at 18. When a court tells people they "will likely have to come up" with money upon losing a lawsuit, they would not consider their interest in the lawsuit "remote." Neither does New York. Whether New York's financial interest in the lawsuit is the kind of interest that suffices for Rule 19 joinder is a fairly debatable issue that we need not decide, but that interest is surely not "remote."

2. The Court observes that "[t]he State's interest in

2

having *another entity* fulfill its constitutional obligation to support the Canal System is assuredly significant, but it is too remote and indirect to make it a necessary party." *Id*. at **[14]** (Emphasis added).

Perhaps the State's interest in having "another entity" fulfill the State's constitutional obligation is remote and speculative. After all, if the Turnpike Authority is denied the use of tolls to fund the Canal System, the State can choose either to have "another entity" raise and disburse the needed funds or to provide the funds directly out of the State's treasury. Which means the State chooses might be speculative, but the State's need to take *some* action to make sure the constitutionally required funds are provided is by no means speculative. Indeed, it is certain.[1]

3. The Court acknowledges that "a defeat for the Thruway Authority may have downstream effects that cost the State money." *Id*. at **[17-18]**. Nevertheless, the Court asserts that "the State's interest here is the same as its interest in the fortunes of any other entity that contributes to a state

---

[1] The Plaintiffs-Appellants suggest that the Thruway Authority itself can find some revenue source other than tolls to maintain the Canal System. That possibility is fairly described as speculative.

3

function and thereby and to that extent obviates an expenditure that the [S]tate *might* otherwise make." *Id.* at **[18]** (emphasis added). The Court offers as an example of the "other entity" the American Red Cross providing flood or famine relief. *See id.*

But the State's interest here is not the same as whatever interest in might have in the fortunes of the Red Cross. Worthy as such private expenditures are, they are not made in lieu of a State obligation, like New York's obligation to maintain the canals.[2] A decision by the Red Cross to cease funding relief to flood or famine victims would be unfortunate, but it would not trigger a state constitutional or statutory obligation to replace such funding.

4. The Court contends that a financial interest, sufficient for Rule 19 joinder, is "inconsistent" with Circuit precedent, *id.* at **[15]**, citing *ConnTech Development Co. v. University of Connecticut Education Properties, Inc.*, 102 F.3d

---

[2] The Court's example of a state interest in the fortunes of a private organization would be persuasive if the private organization had the sole responsibility for discharging a state obligation like the obligation to provide schools. Denial of the use of toll receipts to discharge an obligation of that sort would indeed make the state interest in the fortunes of the private organization relevant. But that example would merely raise the Rule 19 issue, not resolve it.

4

677 (2d Cir. 1996). I see nothing in *ConnTech* that defeats the State's claim that it has a financial interest here.

That case was a suit by ConnTech to enforce an arbitration award it had won for breach of its assignor's contract with Connecticut Education Properties, Inc. ("UCEPI"). UCEPI unsuccessfully moved to dismiss, contending that the State of Connecticut was a necessary party under Rule 19. The adverse judgment against UCEPI created no actual or even potential liability for the State of Connecticut. Here, by contrast, an adverse judgment against the Thruway Authority, restricting the use of tolls, would create a distinct likelihood that New York will have to find some way to pay for maintenance of the canals.

The Court deems *ConnTech* relevant because the contract in that case expressly insulated the State from liability for the debts of UCEPI, and New York has insulated itself by statute from liability for the debts of the Thruway Authority. But that insulation was not decisive in *ConnTech,* and it is not decisive here. The critical difference between the cases is that the adverse judgment in *ConnTech* created no risk of a financial obligation for Connecticut,[3] whereas an adverse

---

[3] In *ConnTech*, our Court relegated to a footnote the rejection of ConnTech's argument that Connecticut had an

judgment in our case would create a serious financial risk for New York.

There appears to be some uncertainty as to what kind of financial interest would make a party necessary within the meaning of Rule 19. On the one hand, it is said that the "interest" of an absent party rendering it necessary must be "legally protected, not merely a financial interest." 4 Moore's Federal Practice § 19.03[3][b] (2004) (internal quotation marks omitted). On the other hand, that same treatise says that in a suit against an insurer in states permitting direct actions against insurance companies, "the insurer . . . would probably be an indispensable party." *Id.* § 19.06[5]. Of course, an insurer in a direct action state is not similarly situated to New York in the pending case, but the example of such an insurer indicates that a financial interest can in some circumstances make a party indispensable.

If toll receipts cannot be used to maintain the Canal System, New York will have an obligation to arrange for

---

interest requiring joinder because UCEPI lacked sufficient assets to satisfy a judgment against it and such a judgment would "implicate the State's treasury." *See* 102 F.3d at 683 n.3. The footnote pointed out that the contract, on which ConnTech had sued, expressly disavowed any such responsibility by the State. In any event, the claim that UCEPI lacked sufficient funds to pay the adverse judgment, lacking support in the record, was entirely speculative.

6

replacement funding. Rather than resolve the debatable issue of whether a financial obligation of that sort creates an interest that renders New York necessary, I prefer to reject joinder on the clear basis that New York is not an indispensable party because its interests are fully protected by the appearance of the Attorney General.