**20-4247-cv**
*Seneca Nation v. Hochul*

# In the
# United States Court of Appeals
# For the Second Circuit

————

AUGUST TERM 2021

ARGUED: JANUARY 20, 2022
DECIDED: JANUARY 26, 2023

No. 20-4247-cv

Seneca Nation, a federally recognized Indian tribe,
*Plaintiff-Appellee*,

*v.*

Kathleen C. Hochul, in her official capacity as Governor of New York, Letitia A. James, in her official capacity as New York State Attorney General, Marie T. Dominguez, in her official capacity as Commissioner of the New York State Department of Transportation, Thomas P. DiNapoli, in his official capacity as Comptroller of the State of New York, and the New York State Thruway Authority, *Defendants-Appellants*.[*]

————

Appeal from the United States District Court
for the Western District of New York.

_____

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Governor Kathleen C. Hochul is automatically substituted as a defendant for former Governor Andrew M. Cuomo and Commissioner Marie T. Dominguez is automatically substituted as a defendant for former Acting Commissioner Paul A. Karas.  The Clerk of Court is directed to amend the caption as set forth above.

_____

Before:  KEARSE, WALKER, and SULLIVAN, *Circuit Judges*.

_____

Plaintiff Seneca Nation brought this lawsuit seeking relief from defendants' ongoing use of an invalid easement over its tribal land. Defendants appeal from the denial of their motion to dismiss. Defendants contend that the Nation is collaterally estopped from bringing this present action based on a 2004 judgment of this court and that this lawsuit is barred by the Eleventh Amendment.  Because these challenges lack merit, we **AFFIRM**.

Judge Sullivan dissents in a separate opinion.

_____

JAMES E. TYSSE (Donald R. Pongrace, Merrill C. Godfrey, Jenny Patten Magallanes, Aileen M. McGrath, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, Washington, D.C. and San Francisco, CA, *for Plaintiff-Appellee*.

BEEZLY J. KIERNAN (Barbara D. Underwood, Jeffrey W. Lang, *on the brief*), *for* Letitia James, Attorney General of the State of New York, Albany, NY, *for Defendants-Appellants*.

Michael L. Roy, *on the brief*, Hobbs, Straus, Dean & Walker LLP, Washington, D.C., *for amicus curiae United South and Eastern Tribes Sovereignty Protection Fund in support of Plaintiff-Appellee*.

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff Seneca Nation brought this lawsuit seeking relief from defendants' ongoing use of an invalid easement over its tribal land. Defendants appeal from the denial of their motion to dismiss. Defendants contend that the Nation is collaterally estopped from bringing this present action based on a 2004 judgment of this court and that this lawsuit is barred by the Eleventh Amendment. Because these challenges lack merit, we **AFFIRM**.

## BACKGROUND

This lawsuit arises from a 1954 agreement between Seneca Nation ("the Nation"), a federally recognized Indian tribe, and New York State, acting through the New York State Thruway Authority. In that agreement, the Nation granted New York an easement over approximately 300 acres of the Cattaraugus Reservation tribal land, on which easement the State was permitted to build a portion of the New York State Thruway. In exchange, New York paid the Nation $75,500. At the time of the agreement, 25 U.S.C. § 177 (commonly called the "Non-Intercourse Act") provided that any easement over Indian land required the consent of the United States. According to the complaint, the 1954 agreement received no such consent.[1]

In 1993, the Nation sued New York State, the New York Thruway Authority, and the Thruway Authority's Executive Director, seeking to invalidate the easement based on the State's failure to comply with the Non-Intercourse Act, as well as ejectment and compensatory damages.[2] The district court dismissed the suit, ruling that New York State was an indispensable party under Federal

---

[1] For the purposes of this appeal, we accept as true the factual allegations in the complaint. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

[2] *Seneca Nation of Indians v. New York*, 383 F.3d 45, 47 (2d Cir. 2004) (per curiam).

Rule of Civil Procedure 19(b) and that the State was immune from suit under the Eleventh Amendment.[3] In 2004, this court affirmed in what we will call *Seneca I*.

On April 11, 2018, the Nation filed the present lawsuit in district court, asserting that the operation of the Thruway constitutes a "continuing unauthorized use . . . of operating a toll road without a valid easement."[4] The complaint alleges that the continuing use of the Thruway "violates the federal treaties and laws establishing the Reservation and protecting it against alienation," such as the Canandaigua Treaty of 1794, and also violates federal law regulating easements across Indian lands.[5]

Critical to our analysis is the relief that the Nation asks this court to provide. The complaint requests (1) an injunction requiring defendants (other than the Comptroller) to "obtain a valid easement for the portion of the Nation's Reservation on which the Thruway is situated, so as to bring continued public use of and public benefit from those Indian lands into compliance with federal law, on terms that will in the future equitably compensate the Nation pro rata for future use of its lands; or, in the alternative, an order enjoining [] [d]efendants . . . from collecting tolls for the portion of the Nation's Reservation on which the Thruway is situated without first obtaining a valid easement"; (2) an injunction requiring the Comptroller to "segregate and hold in escrow all future toll monies collected on the Thruway that are fairly attributable to the portion of the Thruway" on the Nation's lands until defendants obtain a valid easement; and (3) a declaration that defendants (other than the Comptroller) are "violating federal law by not obtaining a valid easement for the

---

[3] *Id.*

[4] Joint App'x 20.

[5] Joint App'x 11 (25 U.S.C. § 323 and 25 C.F.R. Part 169).

portion of the Thruway over the Nation's Reservation lands, and that some of the funds being collected by the Thruway and being deposited with the Comptroller on a continuing basis are derived from this violation of federal law."[6]

Defendants moved to dismiss the suit on the basis that it was collaterally estopped and was barred by the Eleventh Amendment. The district court (Vilardo, *J.*) referred the motion to a magistrate judge (Scott, *M.J.*), who issued a Report and Recommendation ("R&R") that the motion to dismiss be granted.[7]  After the Nation objected to the R&R, the district court reviewed the motion *de novo*, rejected the R&R, and denied the motion to dismiss.[8]  The district court permitted defendants to apply to this court for an interlocutory appeal, which defendants did.

## DISCUSSION

On appeal, defendants argue that (1) the Nation is collaterally estopped by the holding of *Seneca I* from relitigating whether the Eleventh Amendment bars this challenge to the easement, and that, in the alternative, (2) the complaint must be dismissed because the Nation's challenge to the easement is barred by the Eleventh Amendment.  We find no merit to either argument and thus affirm the district court.

## I.    Collateral Estoppel

This court reviews *de novo* a district court's decision granting or denying collateral estoppel.[9]  Collateral estoppel bars parties from

---

[6] Joint App'x 23.

[7] *Seneca Nation v. Cuomo*, No. 18-CV-429V, 2018 WL 6682265, at *9 (W.D.N.Y. Dec. 19, 2018).

[8] *Seneca Nation v. Cuomo*, 484 F. Supp. 3d 65, 79 (W.D.N.Y. 2020).

[9] *Perez v. Danbury Hosp.*, 347 F.3d 419, 426 (2d Cir. 2003).

relitigating an issue that has previously been determined by a valid and final judgment if: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the [losing] party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."[10] Defendants argue that in *Seneca I* this court decided the same issue the Nation seeks to litigate in the current lawsuit. We disagree.

The issue litigated and decided in *Seneca I* is not present here. In *Seneca I*, the issue was whether, under Federal Rule of Civil Procedure 19, New York State was an "absent and indispensable party" to the 1993 lawsuit brought by Seneca Nation.[11] We held that, because it owned the easement, the State was a necessary party to the lawsuit at issue. We then held that the district court did not abuse its discretion in finding that, under Rule 19(b), the action could not proceed against only the Thruway Authority and its Executive Director without the State because the State was an indispensable party, but that the State could not be joined because of its sovereign immunity.[12]

Rule 19(b) enumerates factors the court should consider when determining "whether, in equity and good conscience, the action should proceed among *the existing parties* or should be dismissed" because a necessary party cannot be joined; if the action cannot proceed, that party is indispensable under the Rule.[13] The language of the Rule makes clear that it is focused on whether a lawsuit can proceed with the parties *currently* before the court. Accordingly, the

---

[10] *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (internal quotation marks omitted).

[11] *Seneca I*, 383 F.3d at 46.

[12] *Id.* at 47-48.

[13] Fed. R. Civ. P. 19(b) (emphasis added).

Supreme Court has noted that a court's ruling on this question under Rule 19(b) is a "case-specific inquiry."[14]  It has further stated that "[w]hether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person [under Rule 19(b)], can only be determined in the context of particular litigation."[15]

Seneca I was focused on the narrow issue of whether a lawsuit to invalidate the easement could proceed against the Thruway Authority and its Executive Director in the absence of New York State which, under the circumstances of that suit, enjoyed sovereign immunity.  It did not determine whether an action seeking relief from the invalid easement could proceed against *other* state officials in the absence of the State.[16]  Indeed, it could not have done so because, in performing a Rule 19(b) analysis, a "court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether [the suit] can proceed without him."[17]  And "dismissal [under Rule 19] does not bar a new action that corrects the deficiency of parties."[18]  Because we did not consider in *Seneca I* whether a lawsuit could proceed in the absence of the State if the defendants were other New York state officials sued in their official

---

[14] *Republic of Philippines v. Pimentel*, 553 U.S. 851, 864 (2008).

[15] *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968).

[16] *See Am. Trucking Ass'n, Inc. v. N.Y. State Thruway Auth.*, 795 F.3d 351, 357 n.2 (2d Cir. 2015) (noting that *Seneca I* "stands for the unsurprising proposition that an absent sovereign *may* be a necessary party to a lawsuit that calls into question a real property interest of the sovereign" (emphasis added)).

[17] *Provident Tradesmens Bank & Tr. Co.*, 390 U.S. at 119.

[18] 18A Charles Alan Wright et al., Federal Practice & Procedure § 4438 (3d ed. 2021).

capacities, the issue in this case was not actually decided in *Seneca I* and so collateral estoppel does not apply here.[19]

## II.    Eleventh Amendment

In the alternative, defendants contend that the lawsuit must be dismissed for the separate reason that it is barred by the Eleventh Amendment.  We review *de novo* a district court's denial of a motion to dismiss under that amendment.[20]  A state may be sued in federal court by, among others, Native American tribes only if the state consents.[21]  A plaintiff, however, "may avoid the Eleventh Amendment bar to suit" by suing individual state officers in their official capacities, as opposed to the state, "provided that [the] complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."[22]  Such suits comport with the Supreme Court's decision in *Ex parte Young*,[23] which carved out an exception to Eleventh Amendment immunity in such a case.  It is this type of suit the Nation purports to bring here to challenge the validity of the easement.  Defendants, however, assert that the lawsuit

---

[19] Whether the lawsuit can proceed against these individual state defendants without the State as a party is a separate question from that of collateral estoppel.  Defendants here did not move to dismiss the lawsuit on the basis that the State was an absent but indispensable party under Rule 19.  As the district court noted, should discovery make it clear that the state-official defendants cannot adequately represent the State's interest such that the action should be dismissed under Rule 19 because the State is a necessary and indispensable party, defendants may so move at summary judgment.

[20] *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020).

[21] *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005); *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 20 (2d Cir. 2004) (per curiam).

[22] *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (internal quotation marks omitted).

[23] 209 U.S. 123 (1908).

does not meet the requirements of that doctrine. In determining whether the case falls under *Ex parte Young*, a court need only conduct a "straightforward inquiry" into whether the complaint alleges an ongoing violation of federal law and seeks prospective relief.[24]

## A. Ongoing Violation of Federal Law

Defendants argue that the lawsuit does not allege an ongoing violation of federal law but only that the 1954 grant of the easement violated federal law. We disagree.

To be sure, the invalidity of the easement is critical to plaintiff's case, but this suit is concerned with the *ongoing effect* of the invalidity. The complaint alleges that "[t]he Nation is suffering and will continue to suffer irreparable harm without injunctive relief because its property *will continue* to be invaded without authorization."[25]   In particular, it contends that "[d]efendants' continuing operation of the Thruway without a valid easement violates the federal treaties and laws establishing the Reservation" and, in particular, the Canandaigua Treaty of 1794, which states that "[t]he land of the Seneca Nation is . . . to be the property of the Seneca Nation," which shall not be disturbed "in the [Nation's] free use and enjoyment thereof."[26]   We have held that the term "free use and enjoyment" in the Canandaigua Treaty is to be "interpreted as preventing American

---

[24] *Verizon Md., Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted).

[25] Joint App'x 22 (emphasis added).

[26] Joint App'x 11.  It also alleges that defendants' ongoing operation of the Thruway is an ongoing violation of federal law that comprehensively regulates rights-of-way across Indian lands, such as 25 U.S.C. § 323 and 25 C.F.R. Part 169.

encroachment onto Seneca lands, or interference with the Seneca Nation's use of its lands."[27]

The Supreme Court has noted that easements "burden land that continues to be owned by another,"[28] and if unlawfully obtained by the state amount to a taking under the Fifth Amendment.[29] The complaint's allegation that the Nation's free use and enjoyment of its protected land is continuously impaired by the presence of an unlawful easement therefore reflects an ongoing harm to the Nation.[30] Accordingly, *Ex parte Young*'s first requirement is satisfied.

## B.  Prospective Relief

Defendants and our dissenting colleague also contend that the complaint does not seek prospective relief, but rather seeks compensation for a past wrong. They rely upon the Supreme Court's decision in *Papasan v. Allain*.[31] The Nation responds that its complaint seeks only prospective relief and also relies on *Papasan*. Properly read, *Papasan* supports the Nation. In that case, Mississippi school officials and schoolchildren asserted two claims against Mississippi: (1) that a prior sale of land, the proceeds of which were supposed to be used to fund public education but were not so used, abrogated the State's ongoing trust obligations to the schoolchildren, and (2) that the present unequal distribution of state funds in public education violated the schoolchildren's equal protection rights because children in schools that received less funding were denied a minimally

---

[27] *Perkins v. Comm'r of Internal Revenue*, 970 F.3d 148, 158 (2d Cir. 2020).

[28] *United States Forest Serv. v. Cowpasture River Preservation Ass'n*, 140 S. Ct. 1837, 1845 (2020).

[29] *United States v. Causby*, 328 U.S. 256, 261-63 (1946).

[30] *See Mille Lacs Band of Chippewa Indians v. Minnesota*, 124 F.3d 904, 914 (8th Cir. 1997) (permitting a case that asserted continuing violations of a Tribe's federal treaty rights to proceed under *Ex parte Young*).

[31] 478 U.S. 265 (1986).

adequate level of education while children in schools that received more funding were not.[32]

The Court held that, with respect to the second claim, the alleged ongoing constitutional violation of "unequal distribution by the State of the benefits of the State's school lands [] is precisely the type of continuing violation for which a remedy may permissibly be fashioned under *Young*."[33]  It noted that such a claim that "serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."[34]  The Court's resolution of that claim guides our resolution of this case.  As described above, the Nation alleges that its free use and enjoyment of its land is continually violated by the presence of an unlawful easement that began in 1954.  Thus, it is like the *Papasan* equal protection violation, which, while it *stemmed* from a past wrong, *continued to cause* constitutional violations in the form of ongoing unequal distribution of state funds.  In *Papasan*, the Court found that relief sought for those ongoing harms was prospective and thus permitted by *Ex parte Young*.  After examining the relief sought in this case, we similarly conclude the relief sought from the ongoing violation of the Nation's free use and enjoyment is prospective.

Contrary to defendants' and the dissent's argument, the Nation does not seek relief for a "past loss" equivalent to that which the *Papasan* plaintiffs sought in their first claim and that the Court found barred by the Eleventh Amendment.  In discussing that first claim, the Court held that "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official" is improper

---

[32] *Id.* at 274-75.

[33] *Id.* at 282.

[34] *Id.* at 278.

under *Ex parte Young* "if the relief is tantamount to an award of damages for a past violation of federal law."[35]  It noted that the plaintiffs sought the "equivalent . . . to a one-time restoration of the lost [trust] itself."[36]  But here the Nation seeks no monetary damages for *past* use of the easement.  Instead, it seeks to compel defendants to "obtain a valid easement for the portion of the Nation's Reservation on which the Thruway is situated on terms that will *in the future* equitably compensate the Nation pro rata for future use of its lands."[37]  There is thus no "accrued monetary liability"[38] the Nation would recover here.

Accordingly, the complaint alleges an ongoing violation of federal law and seeks prospective relief.[39]

---

[35] *Id.*

[36] *Id.* at 281.

[37] Joint App'x 11-12 (emphasis added).

[38] *Papasan*, 478 U.S. at 282.

[39]    The dissent additionally suggests that the Nation's request for a declaratory judgment that defendants "will continue to violate federal law by not obtaining a valid easement" is retrospective.  Dissenting Op. 2 (quoting Joint App'x 22).  As we explain above, the Nation alleges an ongoing harm premised on defendants' interference with the Nation's continued free use and enjoyment of its property.  A declaration that the status quo constitutes an ongoing violation of federal law is thus properly prospective under *Papasan*.  Nor are we persuaded by the dissent's argument that the Nation lacks standing to seek an escrow of *future* toll monies attributable to defendants' ongoing violation of the Nation's property rights or that such relief is retrospective.  Although the Nation does not specifically request that escrowed future toll monies be remitted to it, its complaint ties this relief to its demand that defendants purchase a valid easement.  *See* Joint App'x 23.  Such relief both redresses the Nation's asserted injury for purposes of Article III standing and properly constitutes prospective relief under the *Ex parte Young* analysis.

### C. Quiet Title Exception

Defendants' remaining argument is that the lawsuit falls within an exception to the *Ex parte Young* doctrine outlined by the Supreme Court in *Idaho v. Coeur d'Alene Tribe of Idaho*.[40]  Under the "particular and special circumstances" of that case,[41] the Court held the *Ex parte Young* exception inapplicable to a suit alleging an ongoing violation of federal law in which prospective declaratory and injunctive relief was sought against an officer named in his individual capacity, and thus held the suit barred by the Eleventh Amendment.  Defendants allege that this suit is analogous to that case and therefore cannot proceed.  We disagree.

In *Coeur d'Alene Tribe*, a Native American tribe sought to bring an *Ex parte Young* lawsuit to establish its entitlement to the exclusive use, occupancy, and right to quiet enjoyment of certain submerged lands that, while within the boundaries of the tribe's reservation, had been claimed and governed by Idaho for centuries.  The tribe also sought declaratory relief that all Idaho laws and regulations were invalid as applied to that land.[42]  The Court began by noting that the Eleventh Amendment was "designed to protect" the "dignity and respect afforded a State."[43]  It then concluded that the tribe's suit was "the functional equivalent of a quiet title action . . . in that substantially all benefits of ownership and control would shift from the State to the Tribe," and that the Eleventh Amendment bars such an action by a tribe against a state.[44]  It then held that "if the Tribe were to prevail, Idaho's sovereign interest in its lands and waters would be affected in a degree fully as intrusive as almost any

---

[40] 521 U.S. 261, 270 (1997).

[41] *Id.* at 287.

[42] *Id.* at 265.

[43] *Id.* at 268.

[44] *Id.* at 281-82.

conceivable retroactive levy upon funds in its Treasury,"[45] which a state's sovereign immunity under the Eleventh Amendment prohibits.[46] Accordingly, "[u]nder these particular and special circumstances, . . . the *Young* exception [was] inapplicable."[47]

The "particular and special circumstances" that led the Court to conclude that the tribe could not proceed in *Coeur d'Alene Tribe* are not present here. This case is not the functional equivalent of a quiet title action. Here, the Nation holds fee title to the land in question, and New York State's only interest is a possessory one granted by the permanent easement.[48] "[T]here is a difference between *possession* of property and *title* to property," and a court may properly find under *Ex parte Young* "that an official has no legal right to remain in possession of property, 'thus conveying all the incidents of ownership to the plaintiff,' but without 'formally divesting the State of its title.'"[49] The Fifth Circuit has held that a suit in which the plaintiff owned property and was disputing whether the state could constitutionally

---

[45] *Id.* at 287.

[46] *Id.* at 277.

[47] *Id.* at 287.

[48] We have previously distinguished cases from *Coeur d'Alene Tribe* because they did not involve land as to which the *state* held title. *See, e.g.*, *Islander E. Pipeline Co. v. Conn. Dep't of Env't Prot.*, 482 F.3d 79, 92 (2d Cir. 2006) (distinguishing the case because it did not involve an issue of land ownership, but rather involved a company's use of eminent domain to obtain a right of way for a natural gas pipeline); *In re Dairy Mart*, 411 F.3d at 372 (noting that "the Court concluded in *Coeur d'Alene Tribe* that the *Ex parte Young* fiction cannot be employed where certain sovereignty interests are present, as they are when the administration and *ownership of state land* is threatened" (emphasis added)).

[49] *In re Deposit Ins. Agency*, 482 F.3d at 620 (quoting *Coeur d'Alene Tribe*, 521 U.S. at 290 (O'Connor, *J.*, concurring)) (also noting that a federal court has never been prevented "from providing relief from governmental officials taking illegal possession of property in violation of federal law," *id.* at 619).

impose an easement on it was not the functional equivalent of a quiet title action like *Coeur d'Alene Tribe* and so could proceed under *Ex parte Young*.[50] The same holds true here.

Moreover, unlike in *Coeur d'Alene Tribe*, the State has not historically governed the land in question. In addition, here the Nation does not contend that the State's laws and regulations do not apply to the land in question. The present action is thus even further removed from *Coeur d'Alene Tribe*, in which the tribe "sought relief . . . extinguishing state regulatory control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory."[51] Nor do the "special sovereignty" interests that existed in that case exist here. The Court attached considerable importance to the fact that the tribe claimed ownership over submerged lands in navigable waters, which due to their "public character" made them inextricably intertwined with Idaho's sovereignty.[52] Here, nothing comparable to submerged lands in navigable waters is at issue.[53]

In sum, Seneca Nation does not assert property rights over land to which New York State has traditionally held the title and does not

---

[50] *See Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009).

[51] *In re Deposit Ins. Agency*, 482 F.3d at 620 (internal quotation marks omitted).

[52] *Coeur d'Alene Tribe*, 521 U.S. at 286; *see also W. Mohegan Tribe & Nation*, 395 F.3d at 22 n.3 (noting that "significant to the Court's reasoning was the fact that the Coeur d'Alene Tribe's claims implicated the authority of the State of Idaho over submerged lands," which possess "a unique status in the law" (internal quotation marks omitted)).

[53] We have applied the *Coeur d'Alene Tribe* exception only once. In *Western Mohegan Tribe and Nation*, we considered a Native American tribe's claim that New York and its Governor, in his official capacity, were in violation of the Non-Intercourse Act by wrongly possessing land, including submerged land, contained in ten New York counties. The tribe sought "a declaration of [it]s ownership and right to possess their reservation lands

seek a declaration that the State's laws and regulations do not apply to the area in dispute. Therefore, the quiet title exception to *Ex parte Young* outlined by the Court in *Coeur d'Alene Tribe* has no application here.

Accordingly, the lawsuit falls under the *Ex parte Young* exception to the Eleventh Amendment. Thus, neither collateral estoppel nor the Eleventh Amendment bars the Nation from proceeding in this case.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court denying the motion to dismiss.

---

in the State of New York," and to "exclude all others, including holders of fee simple title." *W. Mohegan Tribe & Nation*, 395 F.3d at 20, 22 (internal quotation marks and emphasis omitted). We found that the claims were "virtually identical" to those in *Coeur d'Alene Tribe* because the tribe sought to exclude all others from the land and sought a declaration that the lands in question were not within the regulatory jurisdiction of the State. *Id.* at 21. We thus held that the lawsuit was the functional equivalent of a quiet title action and did not permit it to proceed under *Ex parte Young*. No such deep incursion into the ownership rights of the State is presented here.

RICHARD J. SULLIVAN, *Circuit Judge*, dissenting:

I respectfully dissent from the majority's holding that Seneca Nation (the "Nation") is seeking relief that can properly be characterized as prospective. In my view, the Nation's lawsuit seeks only retrospective relief against New York State (the "State") and is thus barred by the Eleventh Amendment. I would therefore reverse the district court's order denying dismissal.[1]

When determining whether relief is permitted under the Eleventh Amendment, courts consider the "substance rather than the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 279 (1986). Although the Nation has styled its requests for relief as prospective, each request seeks to redress a past wrong – the State's purported failure to comply with the Non-Intercourse Act when it purchased from the Nation an easement permitting it to extend a portion of the New York State Thruway (the "Thruway") over tribal land in 1954. In its complaint, the Nation seeks (1) a declaration that the Defendants (the "State Officials") are perpetrating a continuing violation of federal law by failing to obtain a valid easement, (2) an injunction requiring the State Officials to obtain a

---

[1] I agree, however, with the majority that neither collateral estoppel nor the Supreme Court's decision in *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), provides an independent basis for dismissing the Nation's claim.

valid easement for the portion of the Thruway on the Nation's land, and (3) an order barring the State's collection of tolls for such portion of the Thruway (or else requiring those toll monies to be segregated and escrowed). Taking each in turn, I am not persuaded that any of these requests for relief is proper under *Ex parte Young*, 209 U.S. 123 (1908).

First, what the Nation characterizes as a request for declaratory relief is retrospective in nature. The Nation seeks a declaration that the State Officials "will continue to violate federal law by not obtaining a valid easement." J. App'x at 22. I see no daylight between such a declaration and a backward-looking judgment that the State's easement is invalid. At bottom, both judgments would turn on a prior act: the validity of the State's 1954 purchase of the easement. Surely, if that purchase had complied with federal law, the State would have no need to procure another "valid easement." *Id.* Therefore, in my view, the declaration now sought by the Nation is nothing short of a judgment that the State has "violated federal law in the past," which is surely barred by the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *see also Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (holding that the Eleventh Amendment

2

bars retrospective relief in the form of a declaration "that Connecticut had violated federal law in the past").

Second, the Nation's request for an injunction directing the State to obtain a valid easement is squarely barred under the Supreme Court's holding in *Papasan v. Allain*, 478 U.S. 265 (1986). In *Papasan*, the plaintiffs brought both a breach-of-trust claim and an equal-protection claim against Mississippi officials for their unlawful sale of land held in trust for the schools of the Chickasaw Indian Nation. 478 U.S. at 279, 282. The Supreme Court held that the Eleventh Amendment barred the plaintiffs' attempt to recover the trust corpus because it was a "past loss." *Id.* at 281. The Supreme Court did, however, permit the suit over the "alleged ongoing constitutional violation" – the disparity in funding for Chickasaw schools relative to non-Indian schools in Mississippi – to proceed, reasoning that, even though the disparity has its roots in the past sale of the land, "the essence of the equal protection allegation is the *present* disparity in the distribution of the benefits of state-held assets." *Id.* at 282 (emphasis added).

Like the breach-of-trust claim in *Papasan*, the Nation's request for an injunction seeks compensation for a "past loss." *Id.* at 281. Here, the "past loss" is the 1954 easement transaction that the Nation alleges violated federal law. *Id.*

To remedy this injury, the Nation seeks an injunction ordering the State to purchase the easement anew. But we cannot order the State to "use its own resources" to remedy a historical wrong. *Id.* So while the Nation has carefully framed its request for relief as injunctive in nature, we must analyze what the relief "in essence" seeks to accomplish. *Id.* at 278; *see, e.g., Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (focusing on the "practical effect" of the requested relief); *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (noting that "[w]hile some of these requests for relief have an equitable ring to them[,] . . . that fact does not alter the monetary nature of the relief requested"). Because making the State repurchase the easement is "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law," the Eleventh Amendment bars the Nation from seeking this relief. *Papasan*, 478 U.S. at 278.

The majority's attempt to find refuge in *Papasan*'s equal-protection holding misses the mark. In *Papasan*, the "essence" of the equal-protection claim was the "*present* disparity in the distribution of the benefits of state-held assets and not the past actions of the State." *Id.* at 282 (emphasis added). Accordingly, because the equal-protection claim sought to compel "compliance in the future," it was not

4

barred. *Id.* (emphasis and internal quotation marks omitted). By contrast, the Nation's request for an injunction ordering the State to repurchase the easement would merely serve to redress a past wrong – it would not remedy any "present" or "future" harm.

Third, we lack jurisdiction to order the State to escrow toll monies for the portion of the Thruway that runs over the Nation's land – for two independent reasons. First, if the Nation is not requesting that these toll monies be remitted to it – and it appears it is not – it lacks standing to ask for an order that serves no purpose other than to deprive a third party of benefits. Under Article III, "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Standing requires a party seeking relief to plead – and, ultimately, demonstrate – that it is "likely" that its "injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). Here, the Nation frames its injury as the State's unlawful use of its land. Simple enough. But to redress this injury, the Nation seeks an order prohibiting the State from profiting from that use. I fail to see any colorable argument as to how such

an order would redress the *Nation's* injury, as opposed to merely inflicting pain on the State.

Alternatively, if the Nation *does* intend to ultimately acquire the escrowed toll monies, we again lack jurisdiction because such relief is barred by the Eleventh Amendment and *Papasan*. Under *Papasan*, asking for the income stream from an asset in perpetuity is "essentially equivalent in economic terms" to asking for the value of the asset itself. 478 U.S. at 281. Thus, if the Eleventh Amendment bars a plaintiff from seeking the return or cash equivalent of the asset, it likewise prohibits a plaintiff from seeking the perpetual income stream derived from that asset. *See id.*

\* \* \*

In sum, because none of the relief sought by the Nation falls within the *Ex parte Young* exception to the Eleventh Amendment, I would reverse the order of the district court and instruct it to dismiss this case.